I am informed that all parties are here on our long calendar today, so I will turn to the first case, which is American Railcar Industries v. Giant System, Inc. Thank you. Counsel, you may take the podium. Thank you, Your Honor. Good morning. May it please the Court. In January 2014, Giantsys missed the contractual milestone to deliver a completed SAP system. It was the second time that it had missed that milestone. For the next seven months, Giantsys refused to work with ARI to remediate the project. ARI brought in outside experts to try to get the project back on track to understand what had gone wrong. Giantsys denied all responsibility. It refused to engage with ARI or the consultants to identify what work remained to be done. It refused to work to put together a revised project schedule. It refused to fix critical defects. It demanded more money than it was entitled to, but even rejected offers, compromised voluntary offers by ARI to help alleviate its cash flow problems. For seven months, ARI tried to work in good faith with Giantsys. For seven months, Giantsys held ARI hostage. ARI then exercised its contractual right to terminate. There's no dispute here that Giantsys breached the agreement. That hasn't been a dispute. The issue here is Giantsys tells the Court that ARI isn't entitled to recover anything. They're not entitled, that they must be barred from recovering anything simply because they spent that time trying to work in good faith. But they did get some recovery. Well, they got some recovery, but Giantsys is now looking to have that overturned, Your Honor. Giantsys is telling this Court that they shouldn't be receiving anything, and when they characterize those efforts, unsuccessful as they were, to work in good faith with Giantsys, they're deeming them as an election of remedy that bars ARI from recovering the amounts that it was entitled to for the benefit of its bargain. That's their appeal, though. Excuse me? That is their appeal. It is. What is your appeal? Well, I wanted to address that because I think it goes to show, first, that ARI is entitled to receive the benefit of its bargain. And ARI didn't fully receive that at the trial court below. There were categories of damages, out-of-pocket damages that were awarded to ARI, but there were several other categories that the Court failed to award, and I'm going to focus first on the one category that the Court improperly characterized as consequential damages, and those were the increased staffing costs that ARI incurred. Now, I know the Court's familiar with the standard for general damages versus consequential damages. General damages are the ones that flow naturally and probably from a breach. Here, what the agreement provided and what ARI bargained for was for Giantsys to deliver a fully functional system, one that would achieve its business objectives of increased efficiencies and reduced costs, and to have that delivered on time so it could begin to receive those benefits. Giantsys failed to deliver the system, and ARI had to replace Giantsys, and it took, because of the delays, because of the breaches, ARI's personnel had to expend additional two years working on the project. There's no dispute that that was within the contemplation of the parties. The record and the evidence amply shows that Giantsys insisted that ARI personnel be involved. Whether you call them general damages or consequential damages, the district court, after a 21-day trial, was not persuaded and felt that these damages were speculative or uncertain. Why do we not give that deference? Because, Your Honor, when it comes to, and I think it does matter whether it's general or consequential, when it comes to general damages, when the fact of the damages is certain, as it was here, the fact that it took two more years, the fact that ARI had to commit resources full-time for two more years, the fact of those damages is certain. The argument here has been that there is too much uncertainty with the amount of those damages, but that's not when the- The argument is that it's not consequential damages, is that it? My argument is that they're general damages, yes, they're not consequential. You're saying the court made an error of law. I am. I say the court is opposed, as opposed to listening to 21 days of trial and concluding that there weren't sufficient facts to establish the damages beyond speculation. That's exactly right, Your Honor. The fact of the damages was certain. The amount was proven with detailed records, with audited financial statements, capitalized costs, the documents that went into ARI's financial filings with the SEC. And all of the personnel that were on that project, or that were included in those capitalized costs, worked full-time on the project. They specifically excluded those personnel who weren't dedicated full-time, in order to avoid any risk of over-counting or having to identify who spent 50% or 70%. So, yes, the damages were proven with reasonable certainty under the standard that's applicable to general damages. In fact, we believe, we submit, that they were proven to a standard that was sufficient to satisfy even consequential damages, even though we think these are more properly understood as general damages, because they flowed directly from the breach and the delays. There were other categories of damages that were treated as consequential damages, for which we think the evidence shows that the fact of the damages was established, and the amount of the damages was established with reasonable certainty. This relates to, for instance, the procurement, the reduction in costs. It's called the procurement spend. But the amount of costs that they saved by having a system that improved- The evidence supplied by ARI was not compelling. Many people from your client put on the stand and they asked, can you explain the difference? And they'd say, no, it's just different than it was before. So that wasn't compelling to the district court, nor I venture to say to me, when they didn't have a reason except to say, it had to be this, because it's the only thing that changed. I don't think that's exactly what the evidence said, Your Honor. I think what the evidence showed is ARI hired Giancis to deliver a system that was intended and was supposed to provide these kinds of cost savings and efficiencies. Giancis wasn't able to. But when the system came in place, it delivered the benefits and the efficiencies that it was always intended to do and what ARI contracted for. Yes, they investigated, our expert investigated, and the other witnesses investigated to see, was there any change in the business? Was there any change in the purchasing patterns? Was there a change of suppliers that would account for these cost savings? And there were none of those. The only factor that was identified was this new system that was performing exactly the way it was supposed to do. And that's why those damages were proven. The causation was established, because there was no other cause. It's hard at a certain point to prove a negative. We introduced all of the evidence that we could, and we think we met the standard under New York law. Thank you. You have reserved two minutes for rebuttal. Thank you. Yes. Thank you. You have both a defense and a cross-claim. Correct, Your Honor. Good morning, and may it please the Court. ARI had a choice. When Giancis missed the deadline to finish the project, ARI could either let Giancis stay on the job or it could fire Giancis and make it pay for someone else to complete the job. But what it couldn't do was both. What it couldn't do was to ask Giancis to do a bunch more work to the tune of nearly 10,000 hours, and then later summarily terminate Giancis, saying, in effect, tough luck. But seven months later, it still hadn't performed. There were still problems. Wasn't ARI within its rights to terminate at that point? No, Your Honor. The only reason it ever cited for terminating the contract was the fact that Giancis missed the milestone deadline. That's not so. In the letter advising of the termination, it talks about the continuing failures. I mean, the first extension was only six months. And so here we are, I guess it was July 30th, seven months beyond the second deadline, and Giancis still had not performed. Well, even if that is true, the other thing I'd point out is the only provision of the contract that it cited in its termination letter was 11.2.3, which governs terminations for failures to meet milestones. The other thing is that the district court concluded in footnote 2. Even assuming once the January 1st deadline wasn't met, that didn't mean that Giancis had forever to complete the contract. That's precisely right, Judge Chin. And there are any number of things that ARI could have done to preserve its right to properly terminate the contract. One is that it could have terminated immediately. Two, under the General Supply v. Golett case and the Taylor v. Golett case, it could have reestablished time as being of the essence by giving notice. And it never did that. ARI is a sophisticated party, but it never reestablished time as being of the essence. The other thing is that with respect to these other issues that ARI now cites, as the district court pointed out in footnote 2 of its opinion, it didn't argue those issues as breaches in the district court, and it doesn't challenge that finding on appeal. So that argument is waived. There's also an estoppel problem. New York law has long been that when a party cites one reason for terminating a contract, it can't cite another reason later in litigation. That principle goes back to the 1940s. I don't disagree with that as to the breach as of January 1. But, again, the question is, aren't circumstances different seven months later when there still has been an absence of performance? I mean, in other words, there are new reasons to terminate. Yes, precisely right, that ARI preserved its right to terminate for subsequent breaches. But, again, as the district court said in footnote 2 of its opinion, ARI didn't argue any of these things as breaches of the contract. What was the agreement of the parties after the January milestone date was not met as to what the new date was going to be? There was no date established. So that term was missing. Precisely right. There was a material breach of a contract that was of the essence, and then work continued, but there was no agreement as to what a new date would be. Exactly right. So why isn't the work that's done after the material breach in January subject to quantum error analysis as opposed to express contract analysis? It is. From our perspective, that's precisely what we're seeking. And didn't the district court conclude that at times the English translation of quantum Merowit is to avoid unjust enrichment? And the court found, didn't it, that with respect to ARI, there was no enrichment? Well, yes, the court did say that. But New York law does not require us to prove a benefit for us to recover in quantum Merowit. And I take my cues from the Farish case from the New York Court of Appeals, which says that the plaintiff recovers the reasonable value of his performance, that's Gionsis, whether or not the defendant in any economic sense benefited from the performance. We didn't have to prove that ARI benefited in order to recover in quantum Merowit, although it — You didn't have to prove that there was some value to the services over there. And there was. Did you prove that? Yes, we did. First of all — To the district court's satisfaction. No, not to the district court's satisfaction, but we did prove that. First of all, as the district court itself found, we endeavored to complete the project to the tune of nearly 10,000 hours. That's what ARI's trial Exhibit 70 shows. The standard is not whether you've offered reasonable proof. The standard is whether or not the court's rejection of it was clearly erroneous. Well, it is clearly erroneous, first of all, because, again, as the district court itself found, we endeavored to complete the project. Second, ARI's contract with Wipro, Wipro being the replacement contractor, expressly assumes that a substantial portion of the project was completed. That's ARI Trial Exhibit 225 at PDF page 47. And that assumption was a well-informed assumption because by the time that ARI inked the contract with Wipro, it had hired two major consultants to assess the state of the project, SAP and ATK. So, again, assuming that a major piece of the project was done was a well-informed assumption and is consistent with Gianz's CEO, Raj Unas' testimony, who said that basically 85 percent of the project had been completed. So we don't think that we have to show a benefit in order to recover for quantum merit. But even if we do, we believe that we have shown, in fact, that ARI has received a benefit. If it was 85 percent complete, why did it take another two years for it to be completed? First of all, Gianz's offered to meet with the replacement contractor, Wipro, to explain its work product. And for whatever reason, Wipro chose not to take Gianz's up on that offer. Then it got into the software, didn't understand it, and as a result redid much of the work. The other thing that happened is that around the time that Gianz's was terminated, ARI got a new CIO who decided he was going to take a simpler, more out-of-the-box approach to the project. And that caused some reworking of the software as well. So that's why ultimately it took longer than 85 percent would indicate. I see. Could you address the issue that was discussed by the other side, internal staffing costs? Yes. Are these consequential or general damages? Well, we think that they're – I'm sorry, Your Honor. Yes, we think that they are consequential damages because they are collateral to the basic bargain, which was the delivery of a software system. But in any event, even if they are general damages, ARI had an obligation to prove those damages based on a stable foundation. And what the district court found is that it didn't do that. It provided a shaky foundation for these damages for two basic reasons. First of all, it used a budget as a baseline for these internal staffing costs that it knew nothing of. So these were staffing costs caused because of the delay in implementing the new software? I'm trying to get a handle on what the staffing costs were. That's precisely right. I think their argument is that because the project took longer, they had to incur these additional staffing costs for a longer period of time than they had budgeted. The problem is that the baseline budget, ARI's damages expert knew nothing about that budget. In fact, ARI's CFO, Luke Williams, didn't know who created the budget and didn't know what assumptions went into it. And as the district court discusses in its opinion, there were real reasons to doubt the validity of the budget. The other reason the district court gave for why this was a shaky foundation for the internal staffing costs was that ARI didn't keep track of the time that its employees spent on the project. It just assumed that a certain group of employees spent 100% of their time on the project. They never produced anything approximating a time report. So as I say, even if we're in the land of general damages, they had to provide a stable foundation for those damages, and the district court just found that they didn't. These were the kind of same costs that were being incurred during the time when your client was performing the contract? Correct. Was there internal staffing expenses in connection with the execution of the contract before the January breach? Correct. These are just basically transaction costs that one would incur any time one undertakes a project like this. This is not a goods case, but the UCC characterizes these sorts of transactional costs as incidental or consequential damages. But again, as I say, even if they're general damages, ARI had to prove a stable foundation for these damages, and it just didn't do that. Excuse me. So in a nutshell, Your Honors, our argument basically is that ARI made an election. It reneged on that election and therefore wrongfully terminated in its basic contract principle that given that reneging on the election, it cannot recover under the contract or at a minimum under general supply. Its damages are limited. Thank you, Your Honors. Mr. Norton, you reserve two minutes for rebuttal. Yes, thank you. I'd like to address that election of remedies argument. Kionsis is using election of remedies not as it was intended, not as a way to prevent a double recovery, and the law in New York is clear that that doctrine is intended to effectively prevent a party from having its cake and eating it too. You can't continue to receive the benefits of the contract, and then when the time comes for you to perform your obligation, say, oh, sorry, you're in breach. That's not what happened here. During those seven months, as I started to explain earlier, there were no benefits conferred, and I think Kionsis has effectively disclaimed trying to show that there was any benefit conferred. All they talk about is the hours. They say we don't have to show that we conferred any benefit, that we actually made things better for ARI during this time period, and the record shows that they didn't. They refused to perform work. They asked for more money. But more importantly, the evidence shows, in fact, that the work that Kionsis had performed increased ARI's costs. ARI had to pay Wipro, the replacement, more than a million dollars beyond what it had to pay Kionsis, and while when Wipro first started on the project, it thought that the project might have been further along than it was. I don't think the record shows 85%. They had assumed that it would be further along, given the amount of time that Kionsis had spent. As they actually got on the job, they had to entirely rework their plan, because it turned out that so much more of what Kionsis had done could not be salvaged. It took them seven months to figure out they weren't helping? I'm sorry, no. We tried during seven months in good faith to remediate the project, and they refused, and this isn't a question of a double recovery here. This is a question of Kionsis trying to use an election of remedies as a way to prevent any recovery at all. Thank you, Your Honors. Thank you both. Very nice argument.